Good morning, your honors. May it please the court. My name is Jay Calhoun. I represent DBD, LLC, who is the appellant in this matter. This is a case that I think the facts as well as the law are intertwined for the court to make a decision on the particular ruling. DBD is an LLC in Arizona, as I stated. We filed a motion to set aside a default judgment. Vistancia sued DBD, received a complaint, and a default judgment was issued. When DBD became aware of the complaint, they eventually retained counsel, and we filed a motion to set aside the judgment. And the issue in this case, the major issue in this case, is whether the substitute service that was affected as the only service that was attempted is valid, since that service was not statutory. You have a statutory agent who was served. Is there a dispute about that? Yes, your honor. The statutory agent was not served. It was substitute service. It states that it was substitute service, and we don't understand why. The person that was served was a UPS store and a clerk who worked in it, and somehow someone determined that she was authorized to accept service. The statutory agent designated was Alpha Legal, and in the record in this case, a representative of Alpha Legal filed a declaration saying the company was served with the process in this case. So they received it. They physically got the service. That's a different argument, your honor. I agree that they filed a statement saying that they I don't even understand how this occurred. A UPS store was served. I don't know how the statutory agent got it. The UPS store is not the statutory agent, and the address on the substitute service versus the affidavit, the Alpha Legal file. The question is, did the statutory agent got it? Apparently, the statutory agent stated in their affidavit that they received it. The challenge is that the statutory agent was no longer in business or in business when, I guess, they received the particular documents. Was the statutory agent's listed address a box at a UPS store? No. So how did it end up at the UPS store? That would be a great question for Vastansia. That's one of the issues that the court noted in its order is that no one identifies who this Michelle Ziegler is, and we couldn't identify who it is because we didn't affect the service. Vastansia affected substitute service. There's no motion requesting substitute service, and the only service attempted, the first attempt is substitute, and it was not on Alpha Legal's physical address. But somehow, it gets transmitted from the UPS store to Alpha Legal, but then Alpha Legal doesn't know where your client is and can't send it. Do I have that right? So they've alleged. Now, you understand that the whole point of registering in a particular state and standard requirement of registering to do business in the state is designated statutory agent is exactly to prevent what happened in this case. And keeping up to date your statutory agent for service is an important responsibility of a corporation that wants to do business in a state. I agree. It's a company, Your Honor. It's an LLC, and in Arizona, to affect service upon an LLC recently changed in 2020 under the new LLC laws. And yes, that is correct, but that would also apply to Alpha Legal as well. I don't understand how the court can say that my client, because I guess they failed to update their address, Alpha Legal failed to update their address. So it's a different standard being held for both parties. They're a corporation and a statutory agent, and they should have an effective address or inform their clients that they're no longer in business or have a new address or something to that effect. They had no different address registered at the time of this service, and it was not that UPS store. It was the address attached to affidavit. So if the law applies to DVD, it should also apply to Alpha. I don't think there should be anything different between the two parties. And so we've argued, Your Honor, that DVD did not have constructive notice. And as the court noted in its order, no one can tell when Alpha Legal went out of business. And the court surmised a date. Where in the record is there evidence that Alpha Legal went out of business? It's a footnote. In the motion to set aside, and I don't remember the exact footnote that the court has in its order, but the court addressed the issue because it was in the affidavit of DVD. In our motion to set aside, we reached out to Alpha Legal and could not get a response. You know, I saw that assertion, and we looked to see if we could find anywhere in the record evidence that would support the proposition that Alpha Legal went out of business, and I couldn't find it. And that's one of the issues that DVD is arguing. The court has stated that it went out of business on one date. You're making a factual assertion, and you can't make a factual assertion unless there's evidence in the record to back it. And I couldn't find it, and I would like you to tell me where it is. Well, what I'm saying to the court is the court determined that Alpha Legal went out of business on a certain date. And where the court got that, DVD had acknowledged in its declaration that it contacted Alpha Legal, and they were out of business. They didn't get a response as well. I don't know why that has great relevance under the facts of this particular case because there is a declaration under penalty perjury by the statutory agent indicating that it had been served. It attempted to forward the complaint unsuccessfully because there's been no updating of the address. So all of these arguments about the FedEx office and whether DVD had actually gone out of business, I don't know that it relates to the question of whether it had actually been served. It accepted service of process. Doesn't that end the analysis? No, Your Honor. It did not accept service of process. A UPS store that is not the statutory agent somehow got service of process, and it states it on the affidavit that there was substitute service. So why would there be substitute service if you serve the statutory agent? And that's our argument. The statutory agent wasn't served. I do understand what Alpha Legal is saying. Somehow they got the documents, but they were not served because the UPS store and Michelle Ziegler is not the authorized agent for Alpha, is not the authorized agent for my client, and my client never authorized a UPS store to accept service on their behalf. And that's one of the issues. So Alpha is saying, we didn't update our address, and we're allowing, for some reason, you're going to another entity and business to serve. They didn't update their address, but that doesn't seem to be an issue when DVD also didn't update their address. And there's no dispute they didn't. I think this all occurred, and I don't want to repeat what previous counsel said during the pandemic, Your Honor. No one was really moving to do much of anything during this time. And this, the address issue occurred, I think, in 2021 is when the service was affected, the substitute service was affected as well. And so my client didn't. That issue has been rectified. But I don't believe that just because, I believe the substitute service itself was not effective service on the statutory agent. And I do not believe, and there's no case law in the state of Arizona and in federal courts that says a statutory agent can authorize another party without notice to its own client to accept service. The UPS store is not the authorized agent, and we're asking the court to reverse and vacate the judgment on behalf of our client. I'd like to save the rest of my time for rebuttal. All right. Thank you. Robert. May it please the court. Morning, Your Honors. Robert Eachott, law firm of Milligan Wallace, on behalf of the Appalachian Development LLC, which of brevity I'll refer to as VDL. Your Honors are focused on the exact correct issue here, which is was or was not alpha legal served process. And pursuant to the declaration of Alpha Legal's president, which is dated November 4th of 2021, it states in the very first paragraph, which is. I've got that. That's the R73. I see here that the statutory agent alpha legal indicated that it had, in fact, been served as a statutory agent on October 27, 2021. That's what I've focused on. As I understand counsel's argument is that alpha legal really was not actually properly served because of this whole failure to update the change of address. So counsel saying that we don't have to accept alpha's representation, that it was properly served as the statutory agent because of this substitute service issue. So how do you respond to that? Well, I think Your Honors, there's nothing in the record that indicates that alpha legal was not properly served or that it didn't upkeep its appropriate address. What we know is, is there a dispute that it was delivered to this person at a UPS store? I don't believe so, Your Honor. I think that's exactly right. And if you look at And then the other fact that's not disputed is that it ends up physically in the hands of  record show about how it, why it was served at the UPS store and how it got from the UPS store to alpha legal. That's absent from the record, Your Honor, but we're relying upon the declaration ER73 of alpha legal saying that it was served. But service, even on a designated statutory agent, is the highly stylized process. And then the fact that somebody physically gets a document doesn't mean it was served process in accordance with those stylized rules. And so how do we know from this record that alpha legal was served in the sense that service was served in the sort of rule five sense, but not in the rule four sense, maybe? Understood, Your Honor. The declaration of the process server, if you take a look at that, I believe that's ER43, indicates that service was affected on DBD through a statutory agent alpha legal. And there is some reference to a substituted service issue, but it just named this woman. There's no indication that this woman is not an agent of alpha legal. So there's nothing in the record to suggest that it wasn't properly served pursuant to rules four and five. So do we know who this Micelle Ziegler is and what her connection is to alpha legal? Your Honor, I don't. I don't. But again, there's nothing in the record to suggest that she's not associated with alpha legal. So I think the court, the district court will focus on this appropriately when it identifies the fact that really this whole argument about substituted service, it's immaterial. It does say at ER46 that she's an authorized recipient. Would have been better if it had said authorized recipient of alpha legal. You know, if we could go back in time, Your Honor, and I could re-educate the process server as to how to appropriately, you know, state things, you know, we could do that. But the bottom line to it is alpha legal, through its president's declaration in November of 2021, indicates that it received service. Why was Marsha Preston not served? We couldn't find Marsha Preston, Your Honor. She's hiding behind PO boxes. We had, you know, ultimately, we were able to get a private investigator to try to identify where she was located. Now, this is in the record below. And we thought we had found her. She also was going by multiple aliases. And so that was the problem that we had. And that's why Marsha Preston was not served. Because if she had been served, even in her personal capacity, this whole would issue would have gone away. That's right, Your Honor, if we could find her. And to this day, you know, Ms. Calhoun knows where she is. We don't know where she is. We made attempts, you know, to go out to her, you know, her new addresses. And we're told, you know, no, Marsha Preston lives here. And again, as we indicated, our private investigator has suggested that she goes under multiple names. So that's the issue with respect to the service on Marsha Preston. And I'm happy to continue to address that issue. You know, I do think it's, it's, you know, it is, you know, perfectly clear that ultimately, Alpha Legal obtains service. It has the summons and complaint, tries to forward that on to DBD. DBD doesn't upkeep its records. And for that reason, it didn't receive service to process. But also in focusing on that particular issue, the district court indicated that led to culpable conduct on behalf of DBD. Again, the onus is on as the court appropriately points out, to make sure that their, that their address and that their statutory agents address are appropriately up to date. So, and really, at that point in time, the court, you know, applying the four, excuse me, the three FOC factors, didn't need to do anything further. It only needed to determine that there was culpable neglect. And based on the that we're trying to avoid service of process by hiding behind PO boxes and proxy servers on for domain names. So again, this whole concept of substituted service, court deems it immaterial. And I think it's frankly, it's quite telling what the, you know, what the court ultimately speaks about here that it was, it is unreasonable to suggest that DBD was invalidly or improperly served when a statutory agent, alpha legal, received the complaint and attempted to forward it to DBD. I think that's exactly the case here. Otherwise what's going to happen is we're going to have LLCs hide behind PO boxes or behind multiple LLCs and multiple PO boxes and service, and we're going to run into this problem, you know, more often than not. But the court, again, you know, rightly focused on the fact that, you know, this particular issue and this concept of a substitute service with the entire argument is in fact immaterial. Alpha legal received service and attempted to forward it on to DBD. DBD did not maintain its updated roles to the level of culpable conduct and inexcusable neglect. And the court didn't need to go any further in examining any of the other FOC factors in assessing whether or not good cause existed to set aside the default judgment. I ask you, is this a case where they intentionally failed to respond? In other words, the district court itself determined that DBD was legally unsophisticated. No evidence suggests that it was represented by counsel at the time of the lawsuit. In that circumstance, isn't it a real issue of finding intentional failure to respond that justified a conclusion that they acted with bad faith, which is an intention to take advantage of the opposing party, interfere with judicial decision-making, or otherwise manipulate the legal process? I believe it is, Your Honor. And in the record below, and in our complaint, you know, we set forth our efforts. Were these facts that the district court determined, were they accurate that she was legally, that there was a legal, legally determined that they were legally unsophisticated and no evidence suggested that they were represented by the time that the lawsuit was brought? It is accurate that the court determined that DBD was legally unsophisticated and was not represented at the time of the default judgment. So that is accurate, Your Honor. So how does this become an intentional failure to respond? It does, Your Honor. It's an attempt to avoid service is really what it is. And that's what the court focused on. And once again, we had indicated in our briefing, all of our efforts to try to contact DBD and Ms. Preston. We sent multiple communications. We have representatives of VDL pick up the phone, talk to her about the infringing use of the mark, and she just ignored it. So, you know, that's in the record, Your Honor. So the court appropriately found that, you know, notwithstanding its determination of, you know, legally unsophisticated, there was an effort on the part of DBD, you know, to hide from service and to frustrate the process. I've got 10 seconds. Did you make any effort to try and contact them directly beyond this service of on the so-called designated? Yes, Your Honor. Prior to the initiation of the lawsuit, there were efforts to contact DBD, Ms. Preston directly. There were two cease and desist letters that went out and representatives of VDL actually picked up the press. So there were efforts and there was an effort to try to avoid this whole lawsuit. Just stop using our mark and we could move on. So absolutely, there were those efforts, Your Honor. Our question took you over time, but did you have a question? Thank you very much. Thank you, Your Honors. Thank you, Your Honor. The issue here is the alpha legal's address is not 1830 East Broadway Boulevard, and that's not the address that was listed in the Arizona Corporation Commission when they were served. If they changed their address, that occurred at some other point in time that wasn't addressed. But in the Arizona Corporation Commission, which we addressed with the court, alpha legal's address was not 1830 East Broadway Boulevard at the time of service. It was something different. So the court is saying that alpha legal is not required to update its address. A declaration from Michelle Ziegler to try and get any evidence or present any evidence about who she was? Couldn't find Michelle Ziegler. Tried to contact alpha legal. They didn't answer the phone and couldn't reach them. Eventually found out that the address that they had, they were no longer in possession of the space that was listed in the Corporation Commission. And I have no idea where they are now. So we haven't been able to locate them. So the address they have listed to be statutory agent is not the address that was affected for substitute service. And that is why it's so important that this word substitute be addressed. I see that I'm over my time. I'm going to ask the court, please, to reverse the judgment and vacate the default judgment against Preston and against DBD. All right. Thank you very much, both counsel, for your arguments today. The matter is submitted.
judges: NGUYEN, COLLINS, Korman